[PHILADELPHIA, APRIL 3, 1837.]

## FORKS *against* EASTON.

### CERTIORARI.

Under the act of 9th March, 1771, a settlement was not gained by a purchase of a freehold estate, and a residence thereon for a year, if the pauper, being uncertificated, refused to give security to indemnify the township, &c. on a requisition to that effect, made within a reasonable time after his coming; and such pauper might lawfully be removed from his freehold, into the township from which he came.

THIS was a certiorari to the court of Quarter Sessions of Northampton County, to remove the proceedings in the case of an appeal to that court by Forks township, from an order of two justices removing John Moser, senr. and Mary his wife, from the borough of Easton, to the said township of Forks. The order of removal was dated on the 18th day of August, 1836, and the appeal was entered at the November Sessions, 1836.

The facts which gave rise to the controversy, appeared to be as follows:

John Moser, the pauper, had a settlement in Forks township. On the 2d of October, 1832, he purchased a lot of ground in the borough of Easton, for the price of $25, for which he received a deed, and paid the consideration money. He erected a small cabin on the lot, to which he removed from the township of Forks, in December, 1832. In the course of the following year, he built a frame house, about 10 feet square, containing one story and garret, and resided in it until his removal. He brought no certificate from Forks. On the 15th of January, 1833, the overseers of the poor of Easton, gave him notice, that unless he entered security under the 21st section of the act of 9th March, 1771, he would not gain a legal settlement in the township. He did not give the security required; and having become a charge upon Easton, he was removed to Forks township. It appeared that a judgment had been obtained against him in 1834, for $100.

After argument, the Court (BANKS President,) delivered the following opinion.

" The question is, whether the pauper gained a settlement by his purchase and residence in the borough of Easton? This depends

(Forks *v.* Easton.)

upon the true construction of the 21st section of the act of the ninth of March, 1771. It appears that to April term, 1834, Benjamin Romich obtained a judgment against the pauper in this county, in the Court of Common Pleas, for $100. So far as we are advised, this is more than the lot would sell for. By the 20th section of the act of the 9th of March, 1771, it is provided, that an individual about to remove into another township, borough, or place, may get a certificate of his legal settlement in the place from which he removes. This certificate would be conclusive evidence against the township granting the certificate. This would be giving the person holding it, credit in such other place, on which such place would be bound to receive him. The certificate is a formal and solemn acknowledgment, by which the party is owned as legally settled there; and the township that certifies, is concluded as to such other borough, township or place. This certificate may be demanded and received by any person who has a legal settlement in the place from which he is about to remove. And by the same section, no person so coming by certificate shall gain a settlement in such other place, unless after the date of such certificate, he shall execute some public annual office, being legally placed therein in said place. This provision is general, and excludes all means of gaining a settlement except by being called by the people themselves in such township, to execute some public annual trust, by which they acknowledge him an inhabitant; and thus by their permission he may gain a settlement. By the 21st section, provision is made for those who may desire to remove into any city, borough, township, or place, without a certificate. On his coming into such city, &c. the overseers thereof may require him to indemnify such city, &c. and unless security is given, it is provided that no person whatsoever shall gain a legal settlement in such city, &c. This is a general provision, applicable to all persons. Terms more general cannot be used; language more clear, and an intention more certain to embrace all persons not having certificates, cannot well be conceived. It is attempted to obviate these clear and decisive provisions, by an argument, that in this country, a man cannot without his consent, be removed from his own freehold. As a general principle, this is no doubt correct. But has it any applicability here? The contest is between two contending corporations. The pauper is not in this aspect of the case a party. He now asks relief as given by our poor laws. If he asks the benefit of those laws, he must take this relief upon the terms offered. He cannot ask that the terms be changed in his case. He cannot insist upon any new or other terms than those prescribed by the legislature. His claim is for a statutory right, and he must accept of it as defined in the statute itself. When he asks this right, he subjects himself to all the powers given to the corporation by the law. He presents himself as a pauper. He must take the relief as a pauper. As a pauper he must look for support to the place of his

(Forks v. Easton.)

last legal settlement; and as a pauper he may be removed legally to this place of last legal settlement. I cannot feel the force of this argument against his removal, although it appears to have some countenance from English authorities; but on examination, those authorities fail to establish the principle contended for. This brings us to the question of, Where was his last place of legal settlement? This was in the township of Forks, except he gained a settlement by his purchase and residence in the borough of Easton. This must be shown by the true construction of the 21st section of the aforesaid act. I am not aware that this section has received a construction by our courts. We must then look to the law to ascertain and determine its meaning. On his coming into the borough of Easton, he was required to give security to indemnify it against his being a charge. He did not bring with him a certificate of his settlement elsewhere. This is his case. The act declares that no person whatsoever shall gain a settlement if he has no certificate, unless he gives security, if required. This rule is general; it is universal, except as to mariners, &c. Even the exception of filling a public office, as contained in the preceding section, is dropped. This case comes within the letter of the act, and we think within the spirit of it also. His freehold was small: it is sunk with debt. By the law, the borough of Easton is not bound to support him. He gained no settlement there. On his asking for relief, the borough have a right to remove him to the place of his last legal settlement. This, according to the facts of the case, was Forks township. The court therefore affirm the order of removal."

On the 20th of January, 1837, the court adjudged the last legal settlement of John Moser and his wife, to be in the township of Forks, and confirmed the order of removal with costs; from which there was an appeal to this court.

Mr. *Hepburn* for the appellants, argued that Moser having become a freeholder in Easton, could not lawfully be removed therefrom. He cited the act of 9th March 1771. *King* v. *Dellington*, (*Burrow's Sett. Cases*, 220.) *King* v. *Stanfield*, (*Id.* 205.) *King* v. *Cold Ashton*, (*Id.* 444.) *King* v. *Aylthorp Rood*, (*Id.* 412); 3 *Burn's Justice*, 550, &c. *Lewen on Settlements*, 269, 397, 407. *King* v. *Martley*, (5 *East*, 40.) *Respublica* v. *Cærnarvon*, (2 *Yeates*, 52.) *Berlin* v. *Norwich*, (10 *Johns. Rep.* 230.) *Constitution of Penn.* Art. ix. § 1.

Mr. *Reeder*, (with whom was Mr. *Porter*,) *contra*.

The opinion of the court was delivered by

GIBSON, C. J.—The purpose of the twentieth and twenty-first sections of the act of 1771, is to give a certificated inhabitant a choice

of residence, where it may be done without risk to the township into which he removes, freed of molestation from the overseers of the poor.   To this end, it is provided, that his certificate of settlement, while it protects him from being sent back before he shall have become actually chargeable, shall, in that event, compel the township which granted it, to receive him without cavil or delay; and that he shall gain no settlement in the township of his residence by any other act than the execution of an office for a year.   It is further provided, that an uncertificated inhabitant refusing to indemnify the township of his new residence, shall not gain a settlement in it by any act whatever.   The plan is a simple one, and consistent in its parts.   Coming away with a certificate, he is removable only when actually chargeable, but incompetent to gain a settlement in the mean time, by any other than one particular act; coming away without it, and refusing to give security, he is removable when likely to become chargeable, and incompetent to gain a settlement by any act at all.   How did this pauper come?   Having previously purchased a lot in Easton for twenty-five dollars, he moved into a hovel on it in December, 1832, and received a demand of security on the fifteenth of January following, at furthest only forty-five days after his arrival, with which he refused to comply; and, after a residence of three years, became actually chargeable.   The questions which result, are, whether against the express inhibition of the sections quoted, he gained a settlement by residence on his freehold under the seventeenth section of the same act; and if he did not, whether he were removable to the place of his last settlement.   It is contended that his case is not within the inhibition, because the demand of security was not in time, and because a freehold residence, though within the letter, is not within the meaning of it.

It would be dangerous to fix any precise limit to the time within which security is to be demanded, and I shall not attempt it.   No more is practicable, than to say it must be reasonable, and proportionate to the circumstances.   Had the overseers stood by while the pauper was expending his means in purchasing or improving, and while appearances indicated a likelihood of his eventually becoming chargeable, there might be room for complaint.   But there was no unreasonable delay; or at least, he was not prejudiced by it.   He had completed his purchase, and built his hovel before he arrived; and he erected the frame house subsequently to the demand.   What more would he have?   The overseers are not to be ever ready with their demand, to pounce upon every new inhabitant the instant he sets his foot over the line.   Time is to be allowed for inquiry and consideration, and we perceive not that its proper limits were transcended.

And why should the residence of an uncertificated freeholder, who had refused to give security, be excepted from the positive mandate of the act?   " In all cases upon settlement law," said Mr.

(Forks v. Easton.)

Justice ASHHURST, in *Rex* v. *The Inhabitants of Fillongley*, (1 *T. R.* 460, " it is the safest course to adhere to the words of the act; for if we once depart from that line, it leads to endless uncertainty." Now the twentieth section of our statute shows that where an exception was intended, the legislature knew how to make it. A certificated inhabitant may gain a settlement, by performing what is called an annual office, pursuant to the will of that public which is to support him; but it is not said, nor was it intended, that he may gain it by any act depending exclusively on his own will. What is there in residence on a freehold to make it an exception? The freeholder renders no peculiar service by it as a consideration for the burthen that would be imposed by a settlement gained. As the case stood here, the freehold was eaten to a shell by the incumbrances on it, and as it would not have protected the pauper from arrest at the suit of a creditor, there is no reason why it should protect him from removal at the suit of the township. He brought nothing into the aggregate of its means of subsistence, that was not consumed by him; and he had no claim on the township which had received him in his decrepitude, in preference to one that had had the benefit of his energies in his better years. The stress of the argument, however, seems to be, that he is not removable though he gained no settlement; and Mr. Justice DENNISON has justly remarked in *Rex* v. *The Inhabitants of Aylthorp Rood,* (*Burr. Sett. Cases,* 414,) that gaining a settlement and being irremovable from a place are not convertible terms. The English courts find insurmountable obstacles in the relations of husband and wife, parent and child within the age of nurture, and master and servant; relations which they will not suffer to be interrupted. The inhumanity of tearing asunder ties so tender, has reasonably relaxed the 13 and 14 Car. 2, c. 12, by which removals are authorised; but it is not a little singular to find it asserted in the case last quoted, and held for law in *The King* v. *The Inhabitants of Martley,* (5 *East,* 40,) that a pauper may not be removed from the immediate occupancy of his freehold, because it is declared by Magna Charta, that no one shall be disseised. How the deportation of a freeholder's body by order of two justices may be called a disseisin, any more than an arrest of it on process may be called so, I am at a loss to comprehend. Each of them is equally an act of the law, and neither of them divests his estate, but leaves the possession of it open to enjoyment by his family or tenant. But however that may be in England, the case is necessarily different here, where the principles of Magna Charta are no further in force, than they have been infused into our fundamental laws; and there is no such clause in our declaration of rights, or any other part of the constitution. And indeed, however necessary such a provision may have been in the days when the crown and its feudatories were disposed to assert their claims by violence rather than by the law, the peaceful temper of the times produced by the abolition of feudalities

(Forks *v.* Easton.)

and the progress of civilization, would render the retention of it in our day, not only useless, but preposterous. On the contrary, a species of disseisin is expressly licensed by the constitution, for a man may be said to be disseised, whose freehold is taken from him against his consent, though on compensation made, and for public use. This provision of Magna Charta therefore, is not engrafted in our system, nor are we prepared to say that it would afford an available impediment to removal if it were.

Order of the sessions, and of the justices confirmed.